**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL B., by and through his parent and guardian, Jennifer D., and JENNIFER D. in her individual capacity, of North Wales, Pennsylvania | : | Civil Action |
| Plaintiff | : | |
| v. | : | No. |
| NORTH PENN SCHOOL DISTRICT<br>401 East Hancock Street<br>Lansdale, Pennsylvania 19446 | : | Jury Trial Demanded |
| Defendant | : | |

## COMPLAINT

## I. Introduction

1. In or about December 19, 2024, Plaintiff Jennifer D. discovered that a student at North Penn High School had taken and disseminated photographs of her son, Plaintiff Michael B. ("Michael"), using the toilet in 2022 and 2023.

2. Michael is a child with severe, multiple disabilities, including Autism Spectrum Disorder and Intellectual Disability.

3. The Defendant School District was aware that these intimate photographs were taken, but deliberately chose not to investigate and discipline the perpetrator, to assist and support Michael, or to prevent discrimination as required by Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131; and the United States Constitution through 42 U.S.C. § 1983 ("Section 1983").

4. More specifically, the Defendant failed to: (a) inform Plaintiffs of their rights under

Title IX; (b) initiate the mandatory Title IX investigation and grievance processes; (c) take reasonable, effective, and swift action to provide supportive measures to Michael; (d) prevent the recurrence of sex and disability-based discrimination through the continued dissemination of the photographs; (e) implement corrective measures; or (f) provide increased security measures.

5. Although the School District knew of the photographs taken across multiple school years, students circulated them through the halls of the School District, cyberbullying and humiliating Michael because of his disabilities and subjecting him to sex-based harassment.

6. This action is brought by Plaintiff Michael B. against Defendant under Title IX for its deliberate indifference to sex-based discrimination, denial of benefits, and discrimination; claims for denial of benefits and discrimination under Section 504 and the ADA; and actions pursuant to Section 1983 to enforce the protections of Title IX, the ADA, and the Equal Protection Clause of the Fourteenth Amendment. In addition, the Complaint asserts a Loss of Consortium claim for Plaintiff Jennifer D. who has lost the companionship of and relationship with her son.

## II. Parties

7. Plaintiff Michael B. was born in 2004, and at all times relevant to this Complaint resided in North Wales, Pennsylvania with his mother, Plaintiff Jennifer D. within the Eastern District of Pennsylvania.

8. Defendant School District was the Local Education Agency responsible for Michael's education during the 2022-2023, 2023-2024, and 2024-2025 school years and is located at 401 East Hancock Street, Lansdale, Pennsylvania 19446, which is within the Eastern District of Pennsylvania.

9. The Defendant School District is responsible for providing special education and related services to all eligible children within its borders. It is responsible for honoring the

substantive and procedural rights of eligible children and their parents under Title IX, Section 1983, Section 504 of the Rehabilitation Act, the ADA, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., all regulations and policies thereunder, and Chapters 14 and 15 of Title 22 of the Pennsylvania Code.

10. The School District is the recipient of several sources of federal funds.

11. The Defendant School District is a public entity responsible for compliance with the guarantees of Title IX, Section 504, and Title II of the ADA. 42 U.S.C. § 12132.

## III. Jurisdiction and Venue

12. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case raises federal questions under Title IX, Section 1983, and the United States Constitution. This Court has supplementary jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a). The amount in controversy, exclusive of interest and costs, exceeds $150,000.

13. Plaintiffs are not required to exhaust administrative remedies to pursue this civil action because Plaintiffs request compensatory damages, which are not available under the Individuals with Disabilities Education Act ("IDEA").

14. All the Defendant's actions have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## IV. Applicable Federal Law

### A. Title IX

15. Title IX proscribes discrimination, exclusion, or denial of benefits on the basis of sex in educational institutions or programs which receive federal funding. 20 U.S.C. § 1681 ("No

person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]").

16. The Supreme Court and the Third Circuit have repeatedly and unequivocally recognized a private right of action to enforce Title IX, as well as a monetary damage remedy in such private actions. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41, 119 S. Ct. 1661 (1999) (money damages for student-on-student sexual-based discrimination); *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 281, 118 S. Ct. 1989 (1988) (money damages for teacher-on-student sexual discrimination); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182, 125 S. Ct. 1497, 1509-10 (2005) (money damages for retaliation claims under Title IX); *Hall v. Millersville University*, 22 F.4th 397, 404 (3d Cir. 2022) (money damages for deliberate indifference to sexual harassment by non-student guest on campus); *M.S. by and through Hall v. Susquehanna Township School District*, 969 F.3d 120, 125 (3d Cir. 2020) (*citing Gebser*, 524 U.S. at 281).

17. In *Gebser*, *supra*, the United States Supreme Court recognized that a recipient of federal educational funds violated Title IX and is subject to a private damages action where and "appropriate person" of the recipient is "deliberately indifferent" to known acts of teacher-on-student discrimination. *Gebser* held that state tort principles of respondeat superior and vicarious liability are inapplicable to Title IX cases, and the Plaintiffs do not, and have not, claimed liability against the School District under those doctrines, but rather base Plaintiff's claims solely upon the "deliberate indifference" standard of *Gebser* and the other Supreme Court cases cited herein. Importantly, Gebser held that an "appropriate person" under Title IX includes "an official of the recipient entity with authority to take corrective action to end the discrimination."

18. Courts routinely award money damages for Title IX claims. *Charter Schools USA, Inc. v. John Doe No. 93*, 152 So.3d 657, 312 Ed. Law. Rep. 953 (Fla. 3d DCA 2014) (Jury awarded $5,250,000 to a student who brought a Title IX claim for the charter school's deliberate indifference to sexual abuse and a negligent supervision tort claim after he was raped by a classmate (11 years old) and then attempted suicide). A jury awarded $6 million to a child who was sexually abused by a teacher during her junior and senior years in high school. *See Doe v. School Board of Miami-Dade, Florida*, 521 F. Supp. 3d 1242 (S.D. Fla. 2019); *see also Doe v. Southeast Delco School District*, 2018 WL 6576590 (E.D. Pa. 2018) ($200,000 jury award (and $269,926.90 in attorney's fees and $35,038 in costs) for two plaintiffs' Title IX and Section 1983 actions against teacher who inappropriately touched them by placing the girls' hands on his lap near his penis and by placing his hands on the girls' bodies on several occasions).

**B. Discrimination and Denial of Benefits under Section 504**

19. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, "handicapped persons" in federally funded programs. Plaintiff Michael is such a "handicapped person" as he is a person with disabilities.

20. To state a claim under Section 504, a plaintiff must allege facts showing that: (1) he is an "individual with a disability" as defined under the statute; (2) he is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance;" and (4) he was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability." *Id.*

21. Compensatory damages are available for a Section 504 or ADA violation when the defendant's conduct demonstrates deliberate indifference. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

22. The Supreme Court recognized the deliberate indifference standard as the preponderant standard for these claims and expressly rejected the "bad faith and gross misjudgment" standard as an unnecessarily high bar. *A.J.T. v. Osseo Area Schools, Independent School District No. 279*, 605 U.S. 335, 145 S.Ct. 1647 (2025).

23. The Supreme Court held that deliberate indifference is "a standard only requiring a showing that the defendant disregarded a strong likelihood that the challenged action would violate federally protected rights. Nothing in the text of . . . the ADA or of the Rehabilitation Act suggests that claims based on educational services should be subject to a distinct, more demanding analysis." *Id*. at 345. The Court held that it should not be more difficult for schoolchildren to secure their statutory remedies under Section 504 and the ADA than any other plaintiff who faces discrimination. *Id*.

24. Deliberate indifference is "knowledge that a federally protected right is substantially likely to be violated," and that the defendant "fail[ed] to act despite that knowledge." *S.H. v. Lower Merion School Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). The failure to act in the face of the requisite knowledge involves "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." *Id.* at 263 (internal quotations omitted).

25. Notably, a plaintiff "need not establish that there has been an intent to discriminate in order to prevail under Section 504." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991). Rather, "[t]hey 'may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show bad faith or gross misjudgment.'" *Beam v. Western Wayne School District*, 165 F. Supp. 3d 200, 211 (M.D. Pa. 2016).

26. Recovery is available under Section 504 where entities charged with the care of

persons with disabilities fail to properly provide or supervise that care, and physical injury results. *Enright v. Springfield Sch. Dist.*, 2007 WL 4570970 at *10-11 (E.D. Pa. Dec. 27, 2007) (jury award of $400,000 pursuant to Section 504 and ADA); *Susavage v. Bucks Cty. Intermediate Unit 22*, 2002 WL 109615 at *20 (E.D. Pa. Jan. 22, 2002) (Section 504 damages claim where a public agency allowed the improper use of a harness for an orthopedically impaired child); *Ebonie S. v. Pueblo Sch. Dist. 60*, 2015 WL 4245831 at *1 (D. Colo. July 14, 2015) (family awarded $2.2 million in damages and an additional $900,000 in attorney's fees for Section 504 and ADA claims where the school district caused emotional distress to a special needs kindergartener by frequently using a "wrap-around" desk, which functioned essentially like a cage); *Lawton v. Success Acad. of Fort Green*, 2021 WL 911981 at *2-*3 (E.D.N.Y. Mar. 10, 2021) (charter school subjected five-year-old students to overly harsh discipline, including excluding them from school and calling the police; although students were not physically injured, five plaintiffs accepted an offer of judgment of $1.1 million; court awarded $1.3 million in fees).

**C. Discrimination under the ADA**

27. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff Michael is such an individual with disabilities.

28. Section 12132 of the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).

29. The ADA's causation standard is lower than the Section 504 standard and does not require the disability to be the "sole cause" of the discrimination or denial of benefits; rather

"the ADA only requires 'but-for' causation," i.e., but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285 (3d Cir. 2019).

**D. Section 1983 Claim for Deprivation of Rights Secured by Title IX and the ADA**

30. "[A]ny person within the jurisdiction of the United States may invoke . . . [a Section 1983 claim] against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 175, 143 S. Ct. 1444, 1452 (2023) (*citing* 42 U.S.C. § 1983).

31. "Section 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Id*. at 171 (*citing inter alia Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 253-55, 129 S. Ct. 788 (2009)).

32. Where a statute "has no administrative exhaustion requirement and no notice provisions[,]" a party may bring a Section 1983 claim against the state actor even if the statute permits a private right of action for compensatory damages and equitable relief. *Fitzgerald*, 555 U.S. at 255, 129 U.S. at 795-96.

33. The Supreme Court permits a Section 1983 action to enforce a Title IX claim. *Id*.

34. Furthermore, the Supreme Court's recent decision in *Talevski*, *supra*, expands the use of Section 1983 and permits the Plaintiffs to bring a Section 1983 claim to enforce the ADA against the Defendants.

35. Under the *Talevski*, *supra*, framework, a Section 1983 action can be used to enforce the ADA against a state actor because: (1) Congress did not intend the ADA to be the "exclusive

avenue" to enforce the rights of people with disabilities; (2) an action under the ADA is not "more restrictive" than a Section 1983 claim; (3) a Section 1983 claim is not "incompatible" with an ADA claim; and (4) a Section 1983 claim would not thwart an ADA claim. *See Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

**E. Section 1983 Claim for Municipal Liability (*Monell*)**

36. Where a plaintiff is subjected to sex-based discrimination, the plaintiff may use Section 1983 to enforce the Equal Protection Clause of the Fourteenth Amendment. *Fitzgerald*, *supra*, 555 U.S. at 257-58, 129 S. Ct. at 797.

37. The plaintiff asserting such a Section 1983 claim for constitutional claims such as a violation of the Equal Protection Clause by a school district must show that the harassment was the result of municipal custom, policy, or practice. *Id*. (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018 (1978)). Under *Monell*, where single act in violation of the plaintiff's rights was a decision made by an official with final authority under state law over the relevant policy area, that decision can itself be the "policy" for *Monell* purposes.

38. Official policy includes formal policy, acts of official policymakers and "practices so persistent and widespread as to have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350 (2011) (collecting cases) (internal quotation omitted). "These are 'actions for which the municipality is actually responsible.'" *Id*. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S. Ct. 1292 (1986)).

39. "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation omitted). Similar to a private corporation, a political subdivision "can only act or carry out its

duties through real people—its agents, servants or employees." *Weatherly Area School District v. Whitewater Challengers, Inc.*, 532 Pa. 504, 616 A.2d 620, 621 (1992); *see also Pezzano v. Towamencin Twp.*, 155 A.3d 96, 101 (Pa. Commw. Ct. 2017).

40. Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. *Id.* (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").

**F. Attorney's fees and costs are recoverable for this action.**

41. Attorney's fees and costs are recoverable for the enforcement of Section 504, ADA, Title IX, and Section 1983 claims. 42 U.S.C. § 1988(b); *Dawn L v. Greater Johnstown School Dist.*, 586 F. Supp. 2d 332, 387 (W.D. Pa. 2008).

## V. <u>Factual History</u>

42. Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

43. The facts of this case are disturbing and reflect the administration's culture of indifference to the sharing of nonconsensual pornographic images at North Penn High School.

44. Specifically, a student took nude images of Plaintiff Michael B., a student with severe disabilities, and disseminated them to other students.

45. This misconduct occurred to Plaintiff Michael B. at least three times over multiple school years.

46. The Plaintiffs believe and therefore aver that the sex-based and disability-based bullying and harassment occurred repeatedly and constantly over three school years.

47. As outlined below, multiple decisionmakers within the School District were aware

of the sharing of photographs yet deliberately chose not to take action under Title IX to investigate the matter or provide supportive measures to the survivor.

48. Michael was enrolled as a student at the North Penn School District for the entire academic years of 2022-23, 2023-24, and 2024-25.

49. During these years he was in high school and the School District educated him as a child with a disability pursuant to his Individualized Education Program ("IEP").

50. As part of Michael's IEP he is to use a private bathroom.

51. Michael is identified as a student with Autism Spectrum Disorder and Intellectual Disability; he also has epilepsy and is nonverbal.

52. Michael was born in 2004 and is presently 22 years old.

53. During school hours and on school grounds, a student photographed Michael's naked backside in the public boys' bathroom and then disseminated the photographs to other students.

54. The student took at least six pictures of Michael with his pants down that Plaintiff Jennifer D. is aware of.

55. The first such incident occurred in December of 2022.

56. These pictures were not known until discovered as part of a police investigation that was initiated in late 2024 or early 2025.

57. A second incident occurred in September of 2023 when additional such pictures of Michael were taken and was reported by a student to the administration at North Penn High School.

58. All pictures were taken in the boys' bathroom and showed Michael's backside, with his shirt on, but his pants down, exposing his buttocks.

59. The School District claims it was aware of the 2022 and 2023 incidents but could

not identify much less discipline the perpetrators.

60. The District took no other response to the 2022 and 2023 incidents, including but not limited to, any action under Title IX, Section 504, or IDEA.

61. The District did not call the police in response to the 2022 or 2023 incident, even though both incidents constituted the nonconsensual sharing of pornography of a child with severe disabilities.

62. The photos of Michael in both incidents were taken in the public bathroom even though Michael was not supposed to use that bathroom, particularly not unattended.

63. The photos of both incidents were disseminated to the student body via text message and social media.

64. The School District's administration, including but not limited to, Ms. Schoppe, Mr. Bui, and Mr. Hassler, was aware of the 2022 and 2023 incidents and initiated a cursory investigation, but they claim they could not identify who else was in the bathroom with him.

65. Michael's special education teacher, Ms. Schoettle, was also aware that photos of Michael were taken without his consent and disseminated to the student body.

66. Ms. Schoppe, Mr. Bui, and Mr. Hassler claim they tried checking security videos but claimed they did not know what day the photo was taken or what time the photo was taken.

67. The School District was aware of the taking and dissemination of the photos but did not make an effort to collect and destroy the photos or work with the police to apprehend the individuals involved in the nonconsensual dissemination of pornography.

68. In December of 2024, a student reported to the Assistant Principal, Ms. Schoppe, that Michael was naked in the boys' public bathroom.

69. Knowing previous pictures of Michael had been shared across the student body, the

student was reportedly concerned for Michael and worried because someone else was in the bathroom and may have taken a picture of him.

70. Again, Michael was in the public bathroom and not in a private bathroom, despite the requirement of his IEP.

71. Shortly thereafter, in 2024 another picture of Michael in the bathroom was disseminated, and in this picture Michael's pants were down and his naked buttocks were exposed.

72. Again, this picture of Michael was disseminated to the student body.

73. In the photo, in a reflection in a bathroom mirror, the District was able to identify the student taking the picture as Arafat Rahman.

74. Two administration officials, Mr. Bui and Mr. Hassler, spoke with Arafat and he admitted that he disseminated both the December 2022 and September 2023 pictures.

75. Arafat claimed that the December 2024 pictures were the same pictures taken in December 2022 and September of 2023, just cropped differently.

76. The Plaintiffs believe and therefore aver that these photos were shared repeatedly and constantly through the student body throughout the 2022-2023, 2023-2024, and 2024-2025 school years; thus, subjecting Michael to repeated sex and disability based harassment, bullying, and humiliation.

77. Arafat claimed he was disseminating the same picture for a third time.

78. Michael's special education teacher, Ms. Schoettle, advised that there was a line at the private bathroom, and thus Michael used the public boys' bathroom.

79. The School District clearly violated its obligations under Title IX to conduct a proper investigation.

80. Furthermore, the School District failed to provide proper accommodations to

Michael from the outset to ensure that he could safely use the bathroom.

81. Following the December 2022 and September 2023 incidents, the School District failed to hold an IEP meeting to discuss increased safety measures to protect Michael.

82. The School District's Title IX Coordinator, Neil Broxterman, was also the Director of Special Education at the time that pictures were initially taken in 2022 and 2023.

83. Ms. Schoppe was a Special Education Supervisor and the assistant principal at the time of the 2022, 2023, and 2024 incidents.

84. Ms. Schoppe, Mr. Bui, Mr. Hassler, and Ms. Schoettle were on notice of sex and disability-based discrimination, had the authority to intervene and address the discrimination, yet failed to act with deliberate indifference.

85. The Plaintiffs believe and therefore aver that because multiple administration-level decision makers were aware of the discrimination that the Title IX Coordinator was also aware given he was the Director of Special Education at the time of the incident.

86. In early 2025, the Plaintiff Jennifer D. filed a Title IX Complaint with the School District.

87. Remarkably, the School District found that it did not violate Title IX with respect to the 2022, 2023, or 2024 incidents.

88. However, when the Title IX Coordinator adjudicated the mother's Title IX complaint, he had a clear conflict of interest as he would have had to conclude as part of his investigation that he himself failed to respond to known acts of sex and disability-based discrimination in his then role as Director of Special Education.

89. The repeated incidents of sex- and disability-based harassment, discrimination, and denial of benefits occurred not only during the 2022-2023, 2023-2024, and 2024-2025 school

years, but also the 2025-2026 school year.

90. During the 2025-2026 school year, the School District's self-assessment of its response to this bullying found that it was not required to implement any measures under Title IX to protect Michael, respond to the bullying, or implement corrective measures.

91. The School District's self-assessment of this horrifying pattern of yearslong sex and disability-based bullying was that it did nothing wrong.

92. However, Michael's parent and guardian, Plaintiff Jennifer D. did not become aware of the discrimination until December 2024.

93. The School District never told Jennifer D. about the December 2022 or September 2023 incident.

94. The School District claims it told Michael's father about the September 2023 incident; however, the mother and father are divorced, and the School District was aware that they had an acrimonious relationship and do not speak to one another.

95. Jennifer D. obtained sole custody of Michael in 2024.

96. Once Jennifer D. learned of the discrimination in December of 2024, she contacted the School District and demanded an investigation.

97. The District's investigation revealed that Ms. Schoppe, who was the Supervisor of Special Education at the time, was aware that intimate pictures were taken of Michael and disseminated throughout the student body in 2022 and 2023.

98. Despite her knowledge Ms. Schoppe did not notify Michael's mother of the dissemination of the photographs.

99. Furthermore, the School District did not conduct a Title IX investigation into the discrimination or provide supportive measures to Michael.

100. Michael's mental well-being suffered greatly from the sexual harassment he endured.

101. Jennifer D.'s mental and emotional health has suffered.

102. The School District never shared its Title IX grievance procedure with Plaintiffs.

103. The School District failed to conduct a prompt and effective Title IX investigation of known acts of sex-based discrimination.

104. The School District failed to take prompt action to stop the discrimination.

105. The School District failed to implement appropriate Support Measures under Title IX, including but not limited to, counseling, modifications of class schedules, campus escort services, restrictions on contact between the parties, and increased security. 34 C.F.R. § 106.30(a).

106. The School District failed to respond with corrective measures after notice that sexual harassment that occurred in December 2022 and September of 2023.

107. The School District ignored its obligations to respond to sexual harassment under Title IX, and thus failed Michael through its deliberate indifference.

108. No steps were taken to promptly reevaluate Michael to otherwise assess his safety, self-advocacy, or other special education needs or to modify his IEP to ensure he could safely receive a free and appropriate education in a safe environment.

109. Although on notice of sex based discrimination in December 2022 and September 2023, as described herein, the Defendant failed to: (a) inform Michael and Jennifer D. of his rights under Title IX; (b) initiate the mandatory Title IX investigation and grievance processes; (c) take reasonable, effective, and swift action to provide supportive and protective measures to Michael; (d) prevent the recurrence of sexual harassment; or (e) provide increased security measures.

110. Although on notice of disability-based discrimination in December 2022 and

September 2023, as described herein, the Defendant failed to: (a) reevaluate Michael; (b) amend his Specially Designed Instruction; (c) update the present levels or goals of his IEP; (d) provide him with increased accommodations and Related Services, counseling, instruction in self-advocacy and self-protection, or family training; and (e) provide increased security or a safety plan.

111. Indeed, the Defendant took no action whatsoever under Title IX, Section 504, or the ADA in response to their notice in December 2022 and September 2023 that nude pictures of a child with a disability were taken and shared without his consent.

112. The Defendant ignored its obligations to respond to discrimination under Title IX, the ADA, Section 1983, Section 504, and the Equal Protection Clause of the Fourteenth Amendment, and thus failed Michael through its deliberate indifference, gross misjudgment, and/or policies, practices, or customs.

113. These criminal acts upon Michael were the direct result of: the failure of the Defendant to adequately train, supervise, monitor, and oversee its agents and employees.

114. As a result of the School District's Title IX failures, Michael suffered continued harassment, bullying, emotional loss, mental torment, humiliation, and loss of educational opportunity.

## VI. Claims

### Count I
### Deliberate Indifference to Report of Sexual Harassment in violation of Title IX, 20 U.S.C. § 1681, et seq. (Michael v. Defendant School District)

115. Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

116. Michael was a victim of sexual harassment that occurred on the campus of the

Defendant North Penn School District.

117. The School District failed to respond with corrective measures after notice that sexual harassment, and subsequent bullying occurred.

118. School District employees listed herein, who had the power to investigate or end the sexual harassment described herein, were on notice of said harassment.

119. Defendant's supervisory staff and employees, who had the final authority and power to investigate and to take immediate evaluative/remedial/supportive steps to support/assist Michael and to end the on-going harassment through the sharing of the photos and prevent future harassment, as described herein, were on notice of the discrimination described herein.

120. After learning of the December 2022 and September 2023 discrimination, the School District failed to adequately respond to the sexual harassment, conduct any proper fact-finding or hearing process, and failed to implement corrective measures.

121. The School District ignored its obligations to respond to the sexual harassment under Title IX and thus failed Michael through its deliberate indifference.

122. As a result of the School District's failures under Title IX, Micheal's education was impacted and he suffered continued harassment, bullying, educational loss, mental torment, humiliation, and loss of relationships with his friends and family members.

123. After the December 2022 and September 2023 incident, the School District failed to advise Michael and his mother of the identity of the Title IX coordinator and of Michael's rights under Title IX, including his right to participate in the Title IX grievance process.

124. As a direct and proximate result of Defendant's violations of Title IX as set forth herein, Michael was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, and loss of life's most basic

pleasures. He has incurred and will continue to incur significant physical, emotional, and behavioral harm, educational loss, work loss, and humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendant's violations of Title IX.

**WHEREFORE**, Plaintiff Michael demands judgment in his favor against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**Count II**
**Section 1983 Claim for Enforcement of Title IX**
**(Michael v. School District)**

125. Plaintiff incorporates the averments of all paragraphs in this Complaint as if each was set forth herein at length.

126. The Defendant is a municipal entity and/or state actor subject to suit pursuant to 42 U.S.C. § 1983.

127. At all times material here, the Defendant acted under color of state law by and through its agents, ostensible agents, and/or employees.

128. The federal statutory rights prescribed by Title IX and violated by Defendant as set forth herein include the right to be free from discriminatory conduct.

129. Defendant violated Michael's rights secured by Title IX, by its actions and inactions which subjected him to discrimination and denial of benefits, in violation of 20 U.S.C. § 1681.

130. Title IX conferred onto Michael an equal right to a safe education free from discriminatory treatment and/or loss of educational benefits.

131. Defendant acted and failed to act with deliberate indifference to the rights of Michael, with gross misjudgment, or with bad faith..

132. The District deliberately chose not to offer any supports or services to Michael

despite clear knowledge that he was the victim of sex and disability-based discrimination.

133. As a direct result of the actions of Defendant as set forth herein, Michael suffered injuries and losses as described in this Complaint.

134. As a direct and proximate result of Defendant's violations of Title IX and Section 1983 as set forth herein, Michael was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from Family and other relationships, humiliation, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, mental and behavioral harm, educational loss, work loss, and humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendants' violations of Title IX and Section 1983.

**WHEREFORE**, Plaintiff Micahel demands judgment in his favor against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**Count III**
**42 U.S.C. § 1983 Claim for Enforcement of the Equal Protection Clause**
**(Michael v. School District)**

135. Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

136. A plaintiff who brings a Title IX claim for deliberate indifference to sex-based harassment or abuse, may also bring a claim for money damages under Section 1983 to enforce the Equal Protection Clause of the Fourteenth Amendment. *Fitzgerald*, *supra*, 555 U.S. at 256-57, 129 S. Ct. at 796.

137. The Defendant is a state actor and/or a local or municipal entity acting under color of state law and thus is subject to suit under Section 1983.

138. Plaintiff faced unconstitutional sex-based discrimination as a result of the Defendant's custom, policy, or practice. *See Monell v. New York City. Dept of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

139. More specifically, the Defendant had customs, policies, and/or engaged in the practice of: (a) tacitly permitting the sharing of nude images of students; (b) failing to train and/or supervise its employees in how to identify, report, investigate, and/or quell sex-based discrimination; and/or (c) refusing to implement mandatory Title IX protections, such as the grievance process, investigation, and supportive and corrective measures.

140. Plaintiff was denied a constitutional right to be free from sex-based discrimination because of the Defendant's policies or customs and as a result thereof was injured, as outlined herein.

141. The District deliberately chose not to offer any supports or services to Michael despite clear knowledge that he was the victim of sex and disability-based discrimination.

142. As a direct result of the actions of Defendant as set forth herein, Michael suffered and continues to suffer injuries and losses as described in this Complaint.

143. As a direct and proximate result of Defendant's violations of the Equal Protection Clause and Section 1983 as set forth herein, Michael was injured, and has suffered and continues to suffer physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, mental and behavioral harm, educational loss, work loss, and humiliation, and is entitled to monetary damages stemming from the injuries due to Defendant's violations of the Equal Protection Clause and Section 1983.

**WHEREFORE**, Plaintiff Michael demands judgment in his favor against Defendant for

compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**Count IV**
**Discrimination and Denial of Benefits under Section 504**
**(Michael v. School District)**

144. Plaintiff incorporates the averments of all paragraphs in this Complaint as if each was set forth herein at length.

145. At all relevant times, the Defendant received federal financial assistance from several sources.

146. Plaintiff Michael is a handicapped person, i.e., considered disabled under Section 504 of the Rehabilitation Act.

147. Despite his disabilities, at all times relevant to this Complaint Plaintiff was otherwise qualified to attend Defendant's schools and programs with appropriate special education programming, safe conditions, related services, accommodations and supplemental supports for purposes of Section 504.

148. At all times relevant to this Complaint, Defendant knew of Plaintiff's disabilities and associated needs as described in this Complaint.

149. The Defendant discriminated against Plaintiff on the basis of his disability and denied him the equal benefits of his educational program, by failing to provide him with a safe, appropriate, and properly supervised educational program with properly hired, trained, and supervised educational professionals where he would be free from sex and disability based discrimination.

150. The Defendant had the duty and responsibility to ensure that Plaintiff's educational program was safe, appropriate, and properly supervised with properly hired, trained and supervised

staff.

151. Plaintiff would not have been subjected to these injuries described in this Complaint if he had not been disabled.

152. Plaintiff was deprived of the equal benefits of his educational program, and otherwise subject to discrimination, because of his disabilities.

153. The District deliberately chose not to offer any supports or services to Michael despite clear knowledge that he was the victim of sex and disability-based discrimination.

154. The Defendant acted with deliberate indifference, bad faith, and/or gross misjudgment and violated Plaintiff's rights secured by Section 504. 29 U.S.C. § 794; 34 C.F.R. §§ 104.4 and 104.7.

155. "The Third Circuit has held that the inadequacy of training may itself serve as the basis for liability where it amounts to 'deliberate indifference.'" *Susavage*, *supra*, 2002 WL 109615 at *7 (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

156. As a direct and proximate result of Defendant's violations of Section 504 as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, education loss, humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendant's violations of Section 504.

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendant, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**<u>Count V</u>**
**Discrimination and Denial of Benefits under the ADA**
**(Michael v. School District)**

157. Plaintiff incorporates the averments of all paragraphs in this Complaint as if each was set forth herein at length.

158. The requirements for a claim under the ADA are similar to Section 504, except that under the ADA a plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue and a lower standard of causation is applicable. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12132; *Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995); *Furgess v. Pa. Dept. of Corr.*, 933 F.3d 285 (3d Cir. 2019).

159. As set forth above, Defendant violated Section 504; thus, Defendant also violated the ADA.

160. Plaintiff is a handicapped person, i.e., considered disabled under the ADA.

161. Defendant violated Plaintiff's rights secured by the ADA and 28 C.F.R. § 35.130, by its actions and inactions which: (a) subjected Plaintiff to discrimination, in violation of 28 C.F.R. § 35.130(a); and (b) limited Plaintiff in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

162. As a direct and proximate result of Defendant's violations of the ADA as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, education loss, humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due

to Defendant's violations of the ADA

**WHEREFORE**, Plaintiff Michael B. demands judgment in his favor against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; and such other and further relief as this Court deems just and proper

## Count VI
## 42 U.S.C. § 1983 Claim for Enforcement of the ADA
## (Michael v. School District)

163. Plaintiff incorporates the averments of all paragraphs in this Complaint as if each was set forth herein at length.

164. The Defendant is a municipal entity and/or state actor subject to suit pursuant to 42 U.S.C. § 1983.

165. At all times material here, the Defendant acted under color of state law by and through its agents, ostensible agents, and/or employees.

166. A private citizen, including Plaintiff, can seek relief under Section 1983 to enforce the ADA because the ADA has no exhaustion requirement and does not have an "unusually elaborate," "carefully tailored," and "restrictive" enforcement scheme. *Talevski*, *supra,* 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

167. The federal statutory rights prescribed by the ADA and violated by Defendant as set forth herein include the right to be free from discriminatory conduct.

168. Defendant violated Plaintiff's rights secured by ADA, by its actions and inactions which (a) subjected Plaintiff to discrimination and denial of benefits, in violation of 28 C.F.R. § 35.130(a); (b) limited and denied Plaintiff in the enjoyment of his rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

169. The ADA confers onto Plaintiff an equal right to a safe, free, and appropriate public education free from discriminatory treatment and/or loss of educational benefits.

170. The actions of the Defendant violated rights that the ADA afforded Plaintiff as a student with a disability.

171. Defendant acted intentionally, with deliberate indifference, with gross misjudgment, or with bad faith, to the federally protected rights of Plaintiff.

172. The District deliberately chose not to offer any supports or services to Michael required by the ADA despite clear knowledge that he was the victim of sex and disability-based discrimination.

173. As a direct result of the actions of Defendant as set forth herein, Plaintiff was caused to suffer the injuries and losses as described in this Complaint.

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; and such other and further relief as this Court deems just and proper

**Count VII**
**Loss of Consortium**
**(Jennifer D. v. School District)**

174. Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

175. Although a loss of consortium claim is a distinct cause of action, it is what is known as a "derivative" claim. *Darr Const. Co. v. W.C.A.B. (Walker)*, 552 Pa. 400, 408, 715 A.2d 1075, 1079-80 (1998); *see also Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985); *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *White v. City of Vineland*, 2022 WL 16637823 at *1 (D.C. N.J. 2022) (Parents whose minor or unemancipated child has been injured

as a result of unlawful state actions has a Section 1983 action for a denial of their due process interest in the companionship of their minor child).

176. As a result of the School District's discriminatory conduct and deliberate indifference, Michael suffered damage, including, but not limited to, being denied equal access to his education.

177. As a result of the School District's deliberate indifference to known acts of sex and disability-based discrimination, the School District violated Title IX, Section 504, the ADA, and the Fourteenth Amendment and injured Michael.

178. Plaintiff Jennifer D. seek redress for denial of her right to the comfort, companionship and society (i.e., consortium) of her son due to the School District's continual failures to comply with federal and state law as referenced herein.

179. Plaintiff Jennifer D. has been, continues to be, and in the future will be deprived of the assistance and companionship of her son, all of which has been, continues to be, and in the future will be, to her great detriment and loss.

**WHEREFORE**, Plaintiff Jennifer D. demands judgment in her favor against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

## VII. JURY DEMAND

180. Plaintiffs demand a jury of twelve persons on all claims herein stated.

**WHEREFORE**, the Plaintiffs respectfully request the Court order judgment in their favor as follows:

A. assume jurisdiction over this action;

B. declare the Defendant's actions and omissions to be violative of Title IX, Section

504, the ADA, Section 1983, the Equal Protection Clause, and Pennsylvania law;

C. order an amount of damages to be determined at trial;

D. Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs; and

E. Grant such other relief as this Court deems proper.

Respectfully submitted,

/s/ *D. Daniel Woody*
D. Daniel Woody, Esq.,
PA Attorney ID #: 309121
McAndrews, Mehalick, Connolly,
Hulse and Ryan, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
dwoody@mcandrewslaw.com
Attorney for Plaintiffs